UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY JOHN ORRE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:10 CV 518 DDN |
| ) | |
| DOUGLAS PRUDDEN, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM**

  This action is before the court upon the petition of Missouri state prisoner Anthony John Orre for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Doc. 10.)  For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.  BACKGROUND**

  On August 28, 2008, following the filing of an amended felony information,[1] petitioner Anthony John Orre pled guilty in the Circuit Court of Iron County to one count

---

[1] The amended information alleged the following against petitioner as the only defendant:

**COUNT I**

  The Prosecuting Attorney of the County of Dent, State of Missouri, charges that the defendant, in violation of Section 565.060, RSMo, Charge Code 1303199, committed the Class C Felony of ASSAULT IN THE SECOND DEGREE, punishable upon conviction under Sections 558.011, RSMo, in that on or about or between the 1st day of August, 2007, and the 2nd of August, 2007, in the County of Dent, State of Missouri, the defendant, while acting in concert with another, Gerome Provance, recklessly caused serious physical injury to K.B. by repeatedly hitting her in the head and body.

**COUNT II**

  The Prosecuting Attorney of the County of Dent, State of Missouri, charges that the defendant, in violation of Section 565.120, RSMo . . . committed the Class C Felony of FELONIOUS RESTRAINT, punishable upon conviction under Sections 558.011 and 560.011 RSMo, in that on or about or between the 1st day of August and 2nd day of August, 2007 . . . the

of assault in the second degree and one count of felonious restraint.  (Doc. 11-1 at 4.)  On the same day, the circuit court sentenced petitioner to concurrent terms of five years imprisonment for assault and five years imprisonment for felonious restraint.  (Id.)  These sentences were ordered to run consecutively to a sentence of seven years imprisonment for an unrelated burglary in the second degree.  (Id.; Doc. 16-3 at 23, 25.)

On January 5, 2009, petitioner filed a motion for post-conviction relief with the Circuit Court of Iron County.  (Doc. 11-1 at 10.)  On August 10, 2009, petitioner filed a motion to dismiss.  (Id. at 12-13.)  On August 17, 2009, the circuit court dismissed the petition with prejudice.  (Id. at 13.)

On May 26, 2011, petitioner appealed his conviction, challenging the factual basis for his guilty plea, the jurisdiction of the trial court, the voluntariness of his guilty plea, and the effectiveness of his trial counsel.  Missouri v. Orre, Case No. SD31486.[2]  However, on October, 13, 2011, the Missouri Court of Appeals denied his appeal for timeliness and lack of jurisdiction.  Id.

On November 3, 2011, petitioner filed a writ of habeas corpus under Mo. Sup. Ct. R. 84.23 with the Supreme Court of Missouri, challenging, among other matters, the effectiveness of his appellate counsel and the factual basis for his guilty plea.  (Doc. 16-5 at 28-56.)  On January 31, 2012, the Supreme Court of Missouri denied the motion.  (Id. at 26.)

On March 24, 2010, petitioner commenced this action for a writ of habeas corpus.  (Doc. 1.)  On May 14 and June 12, 2012, petitioner amended his petition.  (Docs.  15-16.)

## II.  PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

---

> defendant, while acting in concert with another, Gerome Provance, knowingly restrained K.B. unlawfully and without consent so as to interfere substantially with her liberty and exposed K.B. t a substantial risk of serious physical injury.

(Doc. 15-1 at 1-2.)

[2]  Although neither party submitted a copy of the appeal or the subsequent denial, the undersigned takes judicial notice from Case.net, http://www.courts.mo.gov/casenet/ (last visited February 8, 2012).

From his original petition, his amended habeas petition, the supplemental material, and the second supplemental habeas petition submitted by petitioner, the court discerns four grounds for relief in this habeas action:

(1) His trial counsel rendered constitutionally ineffective assistance by

    (a) failing to allow petitioner to be present during a pretrial deposition;
    (b) failing to advise petitioner about the distinction between second degree assault, with which he was charged, and the third degree assault to which he pled guilty;
    (c) advising petitioner to plead guilty without fully investigating and disclosing exculpatory evidence to petitioner;
    (d) failing to adequately inform petitioner of the actual elements of the offenses with which he was charged and the consequences of his guilty plea; and
    (e) failing to inform the court of petitioner's mental illness.

(2) The trial court erred in accepting petitioner's guilty plea without a sufficient factual basis and without a voluntary and intelligent waiver.

(3) The trial court erred by sentencing petitioner to five years imprisonment to run consecutively to a prior sentence of seven years.

(4) Petitioner is actually innocent.

(Docs. 1, 15, 16, 21.)

Respondent contends that petitioner's grounds for relief are procedurally barred and without merit.

### III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for the claims they make in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Given the limitation periods under Missouri law, for asserting grounds for relief on direct appeal and in motions for post-conviction relief, no proper procedure for litigating his federal habeas claims now remains available to petitioner. See Mo. S. Ct. R. 29.15(b) (post-conviction relief motion must be filed within 90 days after the mandate of the court of appeals affirming the judgment or sentence is filed; 180 days from the date the person is delivered to the department of corrections); Mo. S. Ct. R. 81.04(a) (10 days to file a notice of appeal after circuit court judgment is final).

However, exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not satisfy the federal statutory requirement. Rather, petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court).

The Missouri Court of Appeals dismissed petitioner's direct appeal for lack of timeliness and lack of jurisdiction. Missouri v. Orre, Case No. SD31486. Petitioner filed a motion for post-conviction relief with the Circuit Court of Iron County, which was dismissed with prejudice at petitioner's request. (Doc. 11-1 at 10-13.) Petitioner also filed a habeas corpus petition with the Supreme Court of Missouri, which it summarily dismissed. (Doc. 16-5 at 26, 28-56.) In sum, petitioner failed to raise the claims presented to this court on direct appeal and for post-conviction relief at the trial and appellate level.

Nevertheless, petitioner may avoid the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Coleman v. Thompson, 501 U.S. 722, 749-50 (1991).

To establish sufficient cause for the procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with a state procedural requirement. Maples, 132 S. Ct. at 922; Coleman, 501 U.S. at 750-52.

To establish actual prejudice, petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland.").

To demonstrate that the failure to review his grounds for relief would result in a fundamental miscarriage of justice, the petitioner may show that he was actually innocent. Murray v. Carrier, 477 U.S. 478, 495-96 (1986).  A habeas petitioner asserting actual innocence to support his allegations of constitutional error must do so with new, reliable evidence.  Schlup v. Delo, 513 U.S. 298, 324 (1995).  Without new evidence of innocence, even a meritorious constitutional claim is not sufficient to permit a habeas court to reach the merits of a procedurally defaulted claim.  Id. at 316.  Schlup requires that a habeas petitioner must "come forward not only with new reliable evidence which was not presented at trial, but. . . come forward with new reliable evidence which was not available at trial through the exercise of due diligence."  Kidd v. Norman, 651 F.3d 947, 953 (8th Cir. 2011).

Petitioner alleges that new evidence supports his assertion of actual innocence. (Doc. 21 at 6-11.)  Specifically, he offers as new evidence the audio and video recording of interviews with the victim.  (Id. at 8.)  However, this evidence is not new under the meaning of Schlup.  Petitioner's trial counsel had created a memorandum six days prior to petitioner's guilty plea detailing the contents of the interview recording.  (Doc. 16-4 at 20-22.)  Further, the deposition of the victim taken on July 25, 2008 refers to this interview, indicating that even if counsel did not have access to the recording prior to the guilty plea, counsel was aware and could have requested it.  (Doc. 16-3 at 14.)  Therefore, petitioner's claim of actual innocence is insufficient to reach the merits of procedurally defaulted claims.

Petitioner also argues that ineffective assistance of counsel provides sufficient cause for procedural default.  As discussed in greater detail below, petitioner fails to show ineffective assistance of counsel.  Therefore, petitioner's claim of ineffective assistance of counsel is also insufficient to reach the merits of his claims.

Nevertheless, Congress has authorized courts to consider the merits of procedurally barred grounds if a court concludes that the grounds are without merit.  28 U.S.C. § 2254(b)(2).  The undersigned has considered all of petitioner's federal grounds on their merits.

## IV.  STANDARD OF REVIEW

None of petitioner's claims were adjudicated on the merits by a Missouri state court.  Therefore, the pre-AEDPA standard for habeas review governs. Gingras v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim

was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted); Montes v. Trombley, 599 F.3d 490, 495 (6th Cir. 2010).  Under the pre-AEDPA standard, the habeas petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59  (1985)

## V.  DISCUSSION

### A. Ground 1

In Ground 1, petitioner alleges specifications of constitutionally ineffective assistance of his trial counsel.  Petitioner also argues that ineffective assistance of counsel provides sufficient cause to avoid the procedural bar.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined ineffective assistance of counsel as arising under the Sixth and Fourteenth Amendments. Under Strickland, petitioners are entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.  Strickland also applies to "challenges to guilty pleas based on ineffective assistance of counsel."  Hill v. Lockhart, 474 U.S. 52, 58 (1985).

Petitioner must demonstrate two elements to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. at 687–88. There is a strong presumption that petitioner's counsel rendered constitutionally effective assistance.  Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment.  Strickland, 466 U.S. at 690–91.

Second, petitioner must demonstrate actual prejudice by counsel's deficient performance.  Id. at 687. To show prejudice, petitioner must establish that counsel's professionally deficient performance rendered the outcome of the proceeding unreliable or fundamentally unfair.  Id. at 687; Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993).  In other words, in order to satisfy the "prejudice" requirement, petitioner must show that

there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 59.

Petitioner claims that his trial counsel's performance was deficient because he failed to allow petitioner to be present at the victim's deposition. However, in correspondence between petitioner and his trial counsel, counsel informed petitioner that he had no right to attend the deposition and that convincing a judge to sign a writ allowing petitioner to do so would be difficult. (Doc. 16-1 at 10.) Counsel further advised that the presence of criminal defendants at depositions is unproductive because witnesses tend to be less open and might use the presence of defendants to explain contradictions in their testimony. (Id.)

Petitioner also claims that his trial counsel's performance was deficient because he failed to inform petitioner about the victim's lack of cooperation with the prosecution and her inconsistent statements, the prosecuting attorney's personal issues at the time of the case, and exculpatory evidence. The alleged exculpatory evidence included the victim's statements that she was in a physical altercation with her friend shortly after the incident and the fact that a favorable plea deal motivated Gerome Provance's agreement to testify against petitioner.[3]

Regarding Provance's plea agreement, correspondence between petitioner and his trial counsel indicates that petitioner knew prior to pleading guilty that Provance had pled guilty and received a reduced sentence in exchange for agreeing to testify against petitioner. (Doc. 16-1 at 6.) Further, the record contains no evidence that the prosecuting attorney's personal issues were known or could have been known to trial counsel. Petitioner's state post-conviction relief counsel informed petitioner of these issues nearly a year after his sentencing. (Doc. 16-1 at 22.)

The record indicates that the state had difficulty contacting the victim and that she was unwilling to come to the prosecuting attorney's office. (Doc. 16-2 at 18.) Further, the record supports petitioner's allegations that the victim made inconsistent statements and that the victim discussed with Officer Becker a physical altercation with her friend. (Doc. 16-2 at 5-8; Doc. 16-3 at 2-18; Doc. 16-5 at 20-22.)

Additionally, petitioner alleges that his trial counsel failed to investigate the victim's credibility, her standing in the community, her reputation for honesty, prior false

---

[3] The record indicates that Gerome Provance participated in the commission of petitioner's criminal activities. (Doc. 16-2 at 26-32.)

complaints made by the victim, her history of prostitution, her mental condition, and her drug addictions.

Regarding the alleged history of prostitution, the prosecution amended the charges to which petitioner pled guilty and made a sentencing recommendation in return for petitioner's guilty plea. (Doc. 16-1 at 16-18.) Had petitioner refused to plead guilty, the prosecution could have considered pursuing the original charges of forcible rape, forcible sodomy, and felonious restraint. (Doc. 15-1 at 3-5.) Missouri's rape shield statute applies to criminal prosecutions of forcible rape and forcible sodomy, effectively barring the admission of evidence of prostitution. Mo. Rev. Stat. § 491.015.

Regarding the victim's reputation for truthfulness, if the victim had testified, evidence of her reputation for untruthfulness may have been permitted, but there is no indication in the record that she had such a reputation. Rather, the officers' and Kyser's testimony indicate that she had a reputation for truthfulness. For example, during a deposition, Officer Becker stated, "The one thing that impressed me more than anything was throughout the many months of interviews and talking with [the victim], she never did change her story. She never did waffle on what had happened." (Doc. 16-2 at 8.) During their depositions, Sergeant Tolles, Officer Chase, and Kyser indicated that they had known the victim for years, but made no mention of any propensity to lie. (Id. at 15, 19, 35.) Similarly, there is no evidence that the victim made any false prior complaints.

The record contains evidence of the victim's drug use and mental infirmities at the time of the incident. (Doc. 16-3 at 17; Doc. 21-1 at 6.)

Petitioner alleges that he would have taken his case to trial had he been aware of the victim's lack of cooperation and inconsistent statements. Petitioner also alleges that he would have presented evidence that the victim's complaints were inconsistent with her interactions with him following the incident, including remaining with petitioner and having sexual intercourse after the initial responders left the scene, and numerous phone calls, texts, and emails between petitioner and the victim following the incident.

The record supports petitioner's allegations that the victim had sexual intercourse with him and continued to communicate with him after the incident. (Doc. 16-3 at 12-16.)

Regarding the inconsistencies in the victim's statements, the record indicates that the victim made significant statements on three separate occasions: 1) to the police at the scene of the incident on August 2, 2007; 2) to Officer Becker at the police station on August 4, 2007; and 3) during a deposition on July 20, 2008. (Doc. 16-2 at 5-8; Doc. 16-3 at 2-18; Doc. 16-5 at 20-22.) Notably, the record shows discrepancies between statements

made at the scene and statements made at the police station. However, the record also provides an explanation: petitioner remained at the scene with the victim after the police left and threatened to kill her. (Doc. 16-2 at 8.) Officer Becker testified that the victim informed him that she only felt comfortable reporting the incident after the incarceration of Provance and after petitioner went to Chicago. (Id.) The discrepancies between the statements made at the police station and the statements made during the deposition are less significant and can be adequately explained by the passage of time.

In this case, the prosecution had the testimony of the victim and Provance as well as the depositions of the three officers present during the initial response at the scene of the crime and Lana Kyser.[2] (Doc. 16-1 at 4; Docs. 16-2, 16-3.) The state also had photographs taken at the scene of the incident and the victim's medical records. (Doc. 1-2 at 2; Doc. 21-1 at 2.)

The prosecution amended the charges and made a recommendation for two five-year sentences running concurrently in exchange for the guilty plea. (Doc. 15-1 at 3.) By comparison, the original charges carried the potential for two life sentences. In light of the leniency of the plea agreement and the strength of the prosecution's case, this court finds that, even if counsel's alleged deficiencies were corrected, petitioner would not have insisted on going to trial.

Next, petitioner alleges that his trial counsel's performance was deficient because his trial counsel failed to advise him of the consequences of his guilty plea and sentencing recommendation. Particularly, petitioner alleges that his trial counsel failed to inform him about the effect of concurrent sentencing and mandatory minimum sentencing.

Correspondence between trial counsel and the prosecuting attorney demonstrates that petitioner had previously rejected the sentencing recommendation that he eventually accepted and insisted that trial counsel bargain for a more favorable one. (Doc. 16-1 at 7.) Additionally, in his brief, petitioner confirms that he had previously rejected the sentencing recommendation. (Doc. 16 at 6.) Rejecting a sentencing recommendation indicates some understanding of it, particularly when the more favorable sentence requested prior to his guilty plea is identical to a sentencing amendment offered by petitioner as a remedy to the instant case. (Compare Doc. 16-1 at 16, 18 with Doc. 1 at

---

[2]Lana Kyser met the victim through an alcoholics recovery program. She had known the victim for seven years at the time of the deposition. She stated that the two had become "pretty good friends," and that she had often helped the victim  She also volunteers at the Agape House, where the victim and petitioner once lived. (Doc. 16-2 at 35.)

15.) In sum, the record is inconsistent with petitioner's allegations concerning consecutive sentences.

Petitioner further argues that his counsel not only failed to inform him of the mandatory minimum sentence but also asserted that petitioner would not be subject to mandatory minimum sentences. See Mo. Rev. Stat. § 558.011. To support these allegations, petitioner cites the transcript of the guilty plea proceedings:

> THE COURT: Is there anything you wish to say regarding your attorney's services I've not asked out about?
>
> [Petitioner]: No, Your Honor, I just would like to know about the percentage on the charges.
>
> THE COURT: The what?
>
> [Petitioner]: Percentages.
>
> THE COURT: The time on the blue book?
>
> [Petitioner]: I don't know how they work. My parole officer told me that I'd have to ask that they be zero percent.
>
> THE COURT: Well, you'll have to make those arrangements through that; that's nothing I have any control over.
>
> [Petitioner]: All right, sir. Thank you.
>
> THE COURT: They'll be able to go through the book and tell you exactly what the consequence is. I can't tell you that, and I'm not sure he can, and I'm not sure anyone in this courtroom can. People at the Department of Corrections are next to God when it comes to that, Mr. Orre.
>
> [Petitioner]: I know.

(Doc. 16-5 at 16-17.)

Although the transcript indicates that petitioner was not aware of the specific mandatory minimum term applicable to his sentence, there is no indication that petitioner believed that mandatory minimum sentencing would not apply. However, even if petitioner had believed that a mandatory minimum sentence was inapplicable and that belief was caused by his trial counsel's misinformation, petitioner's claim remains without merit. "[A] defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences." United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999). "Furthermore, a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence." Id. The transcript of the guilty plea proceedings indicates that the trial court informed the defendant of his maximum possible sentence. (Doc. 16-5 at 3.)

Petitioner also alleges that his trial counsel's performance was deficient because he failed to inform the trial court of petitioner's mental defects despite his trial counsel's knowledge that petitioner suffered from bipolar disorder and post-traumatic stress disorder, had received psychiatric care, and had not been receiving his medication. In particular, petitioner cites to the guilty plea transcript:

> THE COURT: Do you have any reason to believe the defendant is suffering from any mental illness, defects or delusions of any kind?
>
> [Trial Counsel]: No, Your Honor.

(Id. at 11.)

Even assuming that petitioner suffered from the alleged defects, that his trial counsel knew about them, and that his trial counsel's performance was deficient as a result of failing to inform the judge, petitioner fails to show that he was prejudiced. To plead guilty, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 509 U.S. 389, 396-99 (1993). No evidence suggests that petitioner lacked the requisite ability to consult with his trial counsel or an understanding of the proceedings.

Therefore, petitioner's request for relief on the basis of ineffective assistance of counsel is without merit. Further, regarding petitioner's requests for relief on other bases, petitioner's claim that ineffective assistance of counsel caused procedural default is also without merit.

**B. Ground 2**

In Ground 2, petitioner alleges that the trial court erred in accepting his guilty plea because it was without sufficient factual basis and made without an intelligent and voluntary waiver.

Petitioner states that he pled guilty to a charge of second degree assault, but that his testimony at the guilty plea proceeding failed to establish a factual basis for that charge. Specifically, petitioner alleges that his testimony failed to establish that the victim had suffered "serious physical injury," as alleged in Count I of the amended information, which is defined under Missouri law as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the

function of any part of the body." Mo. Rev. Stat. § 565.002(6); see Mo. Rev. Stat. § 565.060.

> The guilty plea proceeding transcript states:
>
> THE COURT: Court calls 07C7-CR00382-02, State vs. Anthony John Orre. Before we went on the record state requested leave to file amended information; leave was granted. [Petitioner] now stands charged in Count I with the class C felony of assault in the second degree. The range of punishment is up to seven years in the Department of Corrections, up to a $5,000.00 fine, or up to a year in the county jail, or a combination of jail time and fine. Count II charges the class C felony of felonious restraint. The range of punishment is up to seven years in the Department of Corrections, or up to a $5,000.00 fine, or up to a year in the county jail, or a combination of jail time and fine. Mr. Hedgecorth, have you received a copy of the information on behalf of your client?
>
> * * *
>
> THE COURT: How do you plead to the amended charges, guilty or not guilty?
>
> [Petitioner]: Right now, these two charges have you read -
>
> THE COURT: Yes.
>
> [Petitioner]: Guilty.
>
> * * *
>
> THE COURT: In Count I you're charged with causing serious physical injury to [the victim] by hitting her in the head and body on August 1st, 2007, and August 2nd, 2007, in Dent County. Tell me what you did to commit that offense.
>
> [Petitioner]: I spanked her on her butt.
>
> THE COURT: Who did you hit?
>
> [Petitioner]: [The victim] at the time.
>
> THE COURT: Where did this take place?
>
> [Petitioner]: In August 1st or 2nd, 2007, in the Walnut - was it Walnut - the Walnut Bowl Hotel in Salem Missouri, Dent County.
>
> THE COURT: And by spanking her, what did you mean by spanking her, Mr. Orre?
>
> [Petitioner]: I spanked her on her bottom.
>
> THE COURT: It says that she received serious physical injury. What type of injury did she receive, Mr. Orre?
>
> [Petitioner]: On her butt she was, like, black and blue.
>
> THE COURT: It also says you acted in concert with Jerome Provance. Did he hit her?
>
> [Petitioner]: Yes. Yes, he did, Your Honor.
>
> THE COURT: Was this while you were present?
>
> [Petitioner]: Yes, he did.

> THE COURT: And where did he hit her?
>
> [Petitioner]: In the face.
>
> THE COURT: And is that where she received the serious physical injury?
>
> [Petitioner]: Yes, Your Honor.
>
> THE COURT: And did you call law enforcement right away?
>
> [Petitioner]: No, I didn't, Your Honor.
>
> THE COURT: You were there present when it took place?
>
> [Petitioner]: Yes, I did, Your Honor.
>
> THE COURT: And you didn't stop Mr. Provance?
>
> [Petitioner]: I tried to, Your Honor.
>
> THE COURT: Did you stop Mr. Provance?
>
> [Petitioner]: I wasn't big enough to stop him, Your Honor.
>
> THE COURT: Did you call the law?
>
> [Petitioner]: No, I didn't, Your Honor.
>
> THE COURT: You knew what you were doing was against the law by participating in the event?
>
> [Petitioner]: Yes, Your Honor.
>
> THE COURT: In Count II you're charged with felonious restraint by restraining her on August 1st and 2nd of 2007. This took place at the same time, is that correct?
>
> [Petitioner]: Yes, Your Honor.
>
> THE COURT: Did you and Mr. Provance prevent her from leaving that day?
>
> [Petitioner]: Yes, Your Honor.
>
> THE COURT: You knew that was against the law?
>
> [Petitioner]: Yes, Your Honor.

(Doc. 16-5 at 2-3, 8-10.)

Petitioner bases his claim on Mo. S. Ct. R. 24.02(e), which provides that a "court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Violations of state law are generally not cognizable claims in habeas corpus proceedings unless they cause a deprivation of liberty. Cranford v. Lockhart, 975 F.2d 1347, 1349 (8th Cir. 1992). Assuming that a violation of state law occurred, it was not the failure to establish a factual basis that caused his deprivation of liberty, but his voluntary act of pleading guilty. Id. However, petitioner fails to show that even a violation of state law occurred. Under Missouri law, "[a] plea of guilty is an admission as to the facts alleged in the information." Milligan v. State, 772 S.W.2d 736, 739 (Mo. Ct. App.

1989). The information in this case adequately stated facts supporting the elements of second degree assault. (Doc. 15-1 at 1-2.)

Additionally, "[i]n the absence of a claim of innocence [accompanying the guilty plea], there is no federal constitutional requirement that a state defendant's guilty plea have a factual basis." Davis v. Russell, 2011 WL 1770932, *9 (E.D. Mo. 2011); Wabasha v. Solem, 694 F.2d 155, 157 (8th Cir. 1982).

Petitioner also argues that the trial court erred in accepting his guilty plea because it was not made intelligently and voluntarily. Specifically, petitioner alleges that his guilty plea was not made intelligently because his trial counsel either failed to inform or misinformed him of the consequences of his plea. Petitioner further alleges that his guilty plea was not made voluntarily because his trial counsel repeatedly told him not to anger the judge.

A trial court has the duty to ensure that a guilty plea is made intelligently and voluntarily. Godinez, 509 U.S. at 400-01. However, as stated above, regarding sentencing options, defendants need only be informed of maximum sentences. Granados, 168 F.3d at 345. The guilty plea proceeding transcript shows that the trial court informed petitioner of the maximum sentences prior to his entry of a guilty plea. (Doc. 16-5 at 3.)

A guilty plea is involuntary if it is "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Brady v. United States, 397 U.S. 742, 755 (1970). "It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired." Mabry v. Johnson, 467 U.S. 504, 508-09 (1984). The record is devoid of evidence indicating that petitioner did not consent to the plea. Additionally, the transcript of the guilty plea proceeding provides the following:

> THE COURT: Have any threats of promises been made to you to induce you to plead guilty?
>
> [Petitioner]: No, Your Honor.
>
> THE COURT: Has anyone made any promise about the sentence you are to receive other than the plea recommendation from the prosecuting attorney?
>
> [Petitioner]: No, Your Honor.

(Doc. 16-5 at 7-8.)

Accordingly, petitioner's request for relief on the basis that the trial court erred in accepting his plea is without merit.

**C. Ground 3**

Next, petitioner argues that the trial court's decision to impose the two five-year concurrent sentences consecutive to petitioner's previously imposed seven-year sentence was unsupported by valid considerations. Petitioner raises no federal grounds to support his argument. As stated above, violations of state law are generally not cognizable claims unless due process is also violated. Cranford, 975 F.2d at 1349. Even assuming that petitioner claims a due process violation, petitioner has failed to show any violation of state law.

Under Missouri law, if a sentence is within the statutory range, "[i]n the absence of a showing that the sentencing court was influenced by motives of prejudice or was induced by corruption . . . , a claim that the sentence was excessive or constituted cruel and unusual punishment is not cognizable in our appellate courts" and not a ground for post-conviction relief. Hill v. State, 543 S.W.2d 809 (Mo. Ct. App. 1976); Eckhoff v. State, 770 S.W.2d 498 (Mo. Ct. App. 1989). Mo. Rev. Stat. § 558.026(2) provides, in relevant part, that:

> If a person who is on probation, parole or conditional release is sentenced to a term of imprisonment for an offense committed after the granting of probation or parole or after the start of his conditional release term, the court shall direct the manner in which the sentence or sentences imposed by the court shall run with respect to any resulting probation, parole or conditional release revocation term or terms.

Mo. Rev. Stat. § 558.026(2).

Petitioner makes no showing that the sentencing court was influenced by prejudice or corruption. His sentence is squarely within the statutory range.

Accordingly, petitioner's request for relief on the basis that the trial court erred in sentencing is without merit.

**D. Ground 4**

Finally, petitioner claims actual innocence and requests an evidentiary hearing to establish his claim. Freestanding claims of actual innocence are generally not cognizable in habeas corpus proceedings. Herrera v. Collins, 506 U.S. 390, 400 (1993). Further, 28 U.S.C. § 2254(e)(2) provides that a court shall not hold an evidentiary hearing on a habeas corpus claim unless a petitioner shows that:

> (A) the claim relies on--

- 15 -

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner has made no such showing.  Accordingly, petitioner's claim of actual innocence and his request for an evidentiary hearing are denied.

Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (internal citation omitted).  Thus, the court will not issue a certificate of appealability under 28 U.S.C. § 2253(c).

## VI.  CONCLUSION

For the reasons stated above, the petition of Anthony John Orre for a writ of habeas corpus is denied.  An appropriate Judgment Order is issued herewith.


　　　　　　　　　　　　　　　　　　　　　　/S/   David D. Noce　　　　　　　
　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**


**Signed on February 22, 2013.**